Frank Brown, Jr., appeals from a judgment dismissing his complaint. We reverse and remand.
The record indicates the following: Brown, an Alabama resident, and Dewitt, Inc., an Alabama corporation, entered into a "Preconstruction Purchase and Escrow Agreement" (the "Agreement"), under which Dewitt agreed to sell to Brown a unit in Nautilus condominiums, which were to be constructed by Dewitt. The Agreement contained an arbitration provision.
On January 31, 2000, Brown sued Dewitt, alleging that Dewitt had breached the Agreement by failing to convey the condominium. On February 28, 2000, Dewitt moved to dismiss Brown's complaint, asserting that the parties had agreed to arbitrate their disputes and that the transaction involved interstate commerce. In *Page 13 
support of its motion, Dewitt submitted a copy of the Agreement.
On March 10, 2000, this Court released its opinion in Sisters of theVisitation v. Cochran Plastering Co., 775 So.2d 759 (Ala. 2000). In that opinion, this Court addressed a motion to compel arbitration and the movant's burden of proof regarding the degree of interstate commerce required to trigger the application of the Federal Arbitration Act ("FAA").
On April 4, 2000, Dewitt filed a "Motion to Supplement the Record in Support of its Motion to Dismiss." At that time, Dewitt also submitted an affidavit from its legal counsel, who stated that a title-insurance-policy commitment on the Brown-Dewitt transaction had been issued by a title-insurance company incorporated in California. A copy of the title-insurance-policy commitment was also submitted. Additionally, Dewitt submitted an affidavit from Julius D. Shivers III, the president of Dewitt, Inc., in which he stated that he had previously sold one of the Nautilus condominiums to a family living in Tennessee.
The record before this Court contains no response from Brown to Dewitt's motion to dismiss. The circuit court's case action summary sheet reflects that, on May 23, 2000, the court granted Dewitt's motion as to Count I of the complaint, seeking specific performance of the contract, and Count II, alleging breach of contract. The case action summary sheet indicates that, on May 31, 2000, the court granted Dewitt's motion to dismiss as to Count III of the complaint, in which Brown alleged fraud. According to the case action summary sheet, the dismissal of Count III was "based upon the arbitration provision." The record contains no separate order, and no findings of fact support the trial court's orders of May 23 and May 31.
Brown appeals, arguing that Dewitt failed to present the proof, as established by this Court in Sisters of the Visitation, supra, necessary to trigger the application of the FAA.
 Standard of Review
This appeal is from the trial court's judgment dismissing Brown's complaint. However, Dewitt's motion to dismiss was based upon the presence of an arbitration provision. Thus, Dewitt's motion would have been more appropriately styled as a motion to compel arbitration. However, Dewitt did not move to compel arbitration and the trial court did not order the parties to arbitrate. Had the trial court compelled arbitration, the proper method for Brown to test the trial court's order would have been a petition for a writ of mandamus.[1]
However, whether review is by appeal or by a petition for a writ of mandamus, the review applied to a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review. Ex parteRoberson, 749 So.2d 441 (Ala. 1999). Here, Dewitt, the moving party, elected to seek an order dismissing Brown's complaint rather than an order compelling arbitration, and Brown has properly appealed from the judgment dismissing his complaint. Although we typically treat a motion according to its substance rather its style, see Evans v. Waddell,689 So.2d 23, 26 (Ala. 1997) ("[t]he substance of a motion and not *Page 14 
its style determines what kind of motion it is"), we will not do so to the detriment of the nonmoving party. We will not impose upon Brown the procedural technicality of petitioning for a writ of mandamus rather than appealing, based on Dewitt's election to style its motion as a motion to dismiss rather than as a motion to compel arbitration. Thus, although we are reviewing a judgment of dismissal, the judgment is essentially one holding enforceable the parties' agreement to arbitrate. Regardless of how we view the motion, a de novo review is appropriate.
 Discussion
On the issue of whether a dispute is subject to the FAA, the party moving for arbitration has the burden of proving the existence of a contract containing a written arbitration clause and relating to a transaction that substantially affects interstate commerce. See Sistersof the Visitation, citing United States v. Lopez, 514 U.S. 549, 559
(1995). If the party seeking to enforce the arbitration agreement fails to make such a showing, then the opposing party has no burden of resisting arbitration and the motion should be denied. See Ex parteGreenstreet, Inc., [Ms. 1992282, June 15, 2001] 806 So.2d 1203 (Ala. 2001); Ex parte General Motors Corp., 769 So.2d 903 (Ala. 1999).
Our analysis of this issue is governed by the five-factor test set forth in Sisters of the Visitation, supra: (1) citizenship of the parties and any affiliation they might have with out-of-state entities; (2) where the tools and equipment used at the project site originated; (3) intrastate versus interstate allocation of costs and services involved in the project; (4) subsequent movement across state lines; and (5) the degree of separability from other contracts. As noted in Sisters of theVisitation, our analysis of this issue is necessarily fact-intensive and in making that analysis we are limited to the facts contained in the record.
We conclude that Dewitt failed to make the required showing that the contract between the parties evidences a transaction "substantially affecting interstate commerce," as required under the governing caselaw. Dewitt concedes that the evidence in the record does not support a finding of substantial interstate commerce, under the first four factors established in Sisters of the Visitation. Dewitt acknowledges that Brown is an Alabama resident and that Dewitt is an Alabama corporation. The contract at issue did not specifically involve or implicate the purchase or lease of any tools or equipment from outside the State of Alabama. The record is wholly devoid of any evidence regarding allocation of the costs of services and materials applicable to interstate versus intrastate activities and, because the subject of the parties' transaction — a condominium — is stationary, it cannot subsequently move across state lines.
Thus, the only factor at issue in this case is the "degree of separability from other contracts." As noted by this Court in Sisters ofthe Visitation, the degree of interstate commerce involved in contracts related to the transaction at issue does not determine whether the transaction at issue substantially affects interstate commerce. However, if a finding that the transaction at issue falls outside the reach of the FAA would disrupt the performance of the related contracts or activities that are subject to the FAA, then the degree of interstate commerce involved in those related contracts is to be given greater weight. SeeSisters of the Visitation, 775 So.2d at 766-67.
In support of this fifth factor, Dewitt submitted evidence indicating that a title-insurance-policy commitment had *Page 15 
been issued by First American Title Insurance Company, a California corporation. Dewitt asserts that this insurance contract was not a "proximity contract," but was integral to the purchase agreement entered into by Dewitt and Brown. Dewitt also asserts that it markets these condominiums in interstate commerce, as reflected by documents evidencing a completed sale of one of the Nautilus condominiums to a family living in Tennessee. Thus, Dewitt asserts, the sale of the condominium at issue involves substantial interstate commerce and the trial court properly dismissed Brown's complaint.
We simply cannot stretch the impact of the title-insurance-policy commitment in the Dewitt-Brown transaction and the previous, unrelated sale of another condominium to an out-of-state resident to the extent urged by Dewitt. Assuming, without deciding, that First American's subsidiary promise to issue title-insurance coverage involved substantial interstate commerce, our analysis must focus primarily on the degree of interstate commerce involved in the instant transaction — the transaction governed by the terms of the Agreement. As noted above, other than the evidence of the title-insurance-policy commitment, the record contains no evidence of an effect on interstate commerce caused by the Agreement. Thus, we must analyze the effect Brown's contract would in fact have on the related title-insurance-policy commitment, if we were to conclude that Brown's contract is not subject to the FAA.
We find that the effect of such a conclusion in this case would be nearly negligible. The title-insurance policy has not yet been issued, because the conveyance of the condominium was never completed. Without a conveyance of the condominium, the actual policy will not be issued and, thus, this contract of insurance will not be completed. However, whether Brown's claims against Dewitt are resolved in litigation or in arbitration has no bearing on whether this policy of insurance is or is not issued. As in Sisters of the Visitation, we conclude that the contract at issue "cannot be said to substantially affect interstate commerce by reason of its impact on other contracts that do substantially affect interstate commerce." Sisters of the Visitation, 775 So.2d at 767.
We also reject Dewitt's argument that the aggregate impact of its sales provides a substantial nexus with interstate commerce sufficient to meet the Sisters of the Visitation test. Dewitt premises this argument upon the evidence of a previous, unrelated sale of a Nautilus condominium to a Tennessee family and asserts that the market for the condominiums is interstate in nature. This argument is much too specious to support a finding in regard to this transaction of the requisite substantial effect on interstate commerce required to invoke the FAA.
We note that, in today's mobile society, every product and service offered for sale on the retail market is offered in the interstate market, limited only by the means of transportation and telecommunication available to potential buyers. If we accepted this fact as sufficient to establish a transaction substantially affecting interstate commerce and therefore sufficient to invoke the FAA, then we would be compelled to conclude that every transaction originating in every gasoline station, in every town, on every day of the year, is one that presumably invokes the FAA, because every owner of a gasoline station can establish that, at some time, an out-of-state resident has stopped to purchase a soft drink, a snack, or a tank of gasoline. We refuse to hold such a tenuous connection to interstate commerce sufficient to invoke the FAA underUnited States v. *Page 16 Lopez, 514 U.S. 549 (1995), and Sisters of theVisitation, supra.
Additionally, the evidence regarding the previous sale of a condominium to a Tennessee family is not evidence regarding this transaction, nor is that previous sale related to this transaction other than in the sense that it involves the same subject matter — a Nautilus condominium. Dewitt was required to support its motion with evidence establishing thatthis transaction involves substantial interstate commerce, either directly or by virtue of its impact on related contracts. See Sisters ofthe Visitation, supra; Tefco Fin. Co. v. Green, 793 So.2d 755
(Ala. 2001). This transaction involves the sale of real property in Alabama to an Alabama resident by an Alabama company, and, according to the evidence before this Court, we must presume that all of the work related to this transaction was to be performed by local workers and that all of the materials were to be provided locally. See Sisters of theVisitation, supra. The only evidence submitted by Dewitt that touches upon interstate commerce in any way and which relates to this transaction is the evidence regarding the title-insurance-policy commitment. We hold that this nexus with interstate commerce, standing alone in an otherwise intrastate real-estate transaction, is insufficient to support the finding of "substantial interstate commerce" that is now required under Sistersof the Visitation to invoke the application of the FAA. See AmericanGen. Fin., Inc. v. Morton, [Ms. 1991999, May 25, 2001] ___ So.2d ___ (Ala. 2001) (intrastate real-estate purchase transaction; affirming the trial court's denial of defendant's motion to compel arbitration because defendant failed to establish that the transaction at issue had a substantial effect on interstate commerce); cf. Thompson v.Skipper Real Estate Co., 729 So.2d 287 (Ala. 1999) (holding that, under the previously applicable "any-tangible-effect-on-interstate-commerce" test, the purchase of in-state real estate had a sufficient nexus with interstate commerce to invoke the FAA).
Finally, we address Dewitt's request for a remand, in the event this Court determines that Dewitt failed to carry its burden of proof in the trial court. Dewitt asserts that its "Motion to Supplement the Record in Support of its Motion to Dismiss" was filed on March 2, 2000, eight days before this Court released its opinion in Sisters of the Visitation. Dewitt notes that "[i]n subsequent proceedings at the trial court, before the trial court made its decision, that case was not addressed by either party or the trial court. Therefore, it is submitted that a remand to assess available evidence in the context of Sisters of the Visitation
analysis would be appropriate."
However, Dewitt's motion to supplement the record and supporting memorandum of law appear to contain an error regarding the date they were filed with the Baldwin County Circuit Court. Although the documents read "[r]espectfully submitted this 2nd day of March, 2000," there are several indications that this is a typographical error. First and most significantly, the date stamped on the documents, upon receipt by the Baldwin County Circuit Court clerk, is April 4, 2000. Second, the certificate of service appearing on those documents reflects a mailing date of April 3, 2000. Third, the motion to supplement the record references arguments presented to the trial court on March 14, 2000, and offers "supplemental evidence" as further support for those arguments. We are compelled to conclude that Dewitt's counsel did not submit, on March 2, 2000, supplemental evidence in support of arguments he had not yet made to the trial *Page 17 
court. Thus, it appears that Dewitt's motion to supplement the record and the supporting memorandum of law should have been dated April 2, 2000, rather than March 2, 2000. Regardless of these conflicting dates, it is the date the Baldwin Circuit Court clerk received those documents that guides our resolution of this argument.
Thus, Dewitt's "Motion to Supplement the Record in Support of its Motion to Dismiss," along with its evidentiary materials, was filed not on March 2, 2000, but, according to the record before this Court, on April 4, 2000, some 25 days after the release of Sisters of theVisitation. Additionally, the trial court did not rule on the motion to dismiss until May 23 and May 31, some 74 days after the release ofSisters of the Visitation. We conclude that Dewitt's counsel had an adequate opportunity to discover the recent opinion and to supplement the evidence submitted in support of Dewitt's motion, if necessary, or to request additional time in which to do so, if necessary. Accordingly, we find no basis upon which to remand this case to allow the parties to reassess the evidence in the context of our holding in Sisters of theVisitation. That assessment should have occurred before the trial court's rulings of May 23 and 31, 2000.
 Conclusion
We conclude that Dewitt failed to meet its burden of showing that this transaction was one "substantially affecting interstate commerce," as that phrase was interpreted and applied in Sisters of the Visitation, supra. The trial court's judgment dismissing Brown's complaint, based on the presence of the arbitration provision, is, accordingly, reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Harwood, J., concurs.
Moore, C.J., and Lyons and Brown, JJ., concur in the result.
See, J., recuses himself.
[1] But see Rule 4(d), Ala.R.App.P., as amended May 10, 2001, to be effective October 1, 2001. That amendment will allow review by appeal, either from an order denying arbitration or from an order compelling arbitration.