Liberty National Life Insurance Company is the defendant in a retaliatory-discharge action filed by Bridgette Douglas. Liberty National appeals from the trial court's order denying its motion to stay *Page 807 
judicial proceedings in that action pending arbitration. We affirm.
 I.
Liberty National hired Douglas as an insurance agent in February 1998. Her duties included selling life-insurance policies to new clients and servicing Liberty National's existing clients in south Alabama. On February 16, 1998, shortly before she was hired, Douglas and a representative of Liberty National executed a document entitled a "Mutual Agreement to Arbitrate Claims" (hereinafter referred to as "the employment agreement"), which stated, in pertinent part:
 "In recognition of the fact that differences may arise between Liberty National Life Insurance Company (`the Company') and the undersigned Employee arising out of or relating to the Employee's recruitment, application for employment or employment with the Company or the termination of that employment, and in recognition of the fact that resolution of any differences in the courts is rarely timely or cost effective for either party, the Company and the Employee have entered into this Mutual Agreement to Arbitrate (`the Agreement') in order to establish and gain the benefits of a speedy, impartial and cost-effective dispute resolution procedure. . . .
". . . .
"Agreement to Arbitrate
 "Except as otherwise provided in this Agreement, the Company and the Employee hereby agree that in consideration of the Employee's continued employment, if either party (or its representatives, successors or assigns) brings an action asserting any claim or cause of action covered by this Agreement in a court of competent jurisdiction, the parties hereby agree to waive their respective rights to a trial by jury. Moreover, the Company and Employee agree that no demand, request or motion will be made for trial by jury.
 "Further, in consideration of the Employee's continued employment with the Company, the Employee agrees that if either party to this Agreement seeks relief in any court of competent jurisdiction for any claim or cause of action covered by this Agreement the defendant to such action may, at any time within sixty (60) days of the service of the Complaint, require all or part of the dispute to be arbitrated by one (1) arbitrator in accordance with the Rules of the American Arbitration Association and the Arbitration Procedures related to this Agreement.
". . . .
"Claims Not Covered by This Agreement
 "This Agreement to Arbitrate does not apply to or cover claims for workers' compensation benefits or compensation, except for claims of retaliation; claims for unemployment compensation benefits; claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information; claims based upon an employee pension or benefit plan the terms of which contain an arbitration or other non-judicial dispute resolution procedure, in which case the provisions of such plan shall apply; criminal charges; or matters involving the National Labor Relations Act."
(Bold print original.)
On June 24, 1998, Douglas sustained neck and spinal injuries when she was involved in an automobile accident. According to Douglas, she sustained these injuries while she was within the line and scope of her employment. Douglas filed a claim for workers' compensation benefits *Page 808 
and took leave in accordance with Liberty National's policy.
Liberty National contends that, long after the expiration of Douglas's leave, and despite repeated requests by Liberty National that she return to work or contact her manager to discuss her return, Douglas failed to do either. On October 18, 1999, Liberty National deemed Douglas to have voluntarily resigned her position and discharged her.
Douglas sued Liberty National, seeking benefits under the Alabama Workers' Compensation Act and damages resulting from what she alleged was a retaliatory discharge; she says she was discharged because she had filed a workers' compensation claim. The trial court severed the two claims, transferring Douglas's claim for workers' compensation benefits to the nonjury trial docket while retaining her retaliatory-discharge claim on the jury trial docket.
Liberty National, relying on the arbitration provisions in the employment agreement, moved to stay the retaliatory-discharge proceedings. That claim, Liberty National argued, was due to be arbitrated. In support of its motion, Liberty National submitted a copy of the employment agreement, together with the affidavit of Thomas Hamby, a vice president of Liberty National. Hamby's affidavit stated, in pertinent part:
 "4. Liberty National is a corporation, incorporated in Alabama with its principal place of business in Birmingham, Alabama. Liberty National is approved to sell insurance in nearly every state and does business throughout the Southeastern United States. Liberty National has acquired many insurance companies located outside of Alabama and currently services the policyholders who held policies at the time of the acquisitions. Liberty National has policyholders in most states with whom Liberty National directly corresponds. In the course of doing business, Liberty National frequently sends and receives correspondence via the U.S. mail and Federal Express across state lines.
 "5. When hiring insurance agents, such as Douglas, Liberty National fully anticipates that the agents will service the business of existing clients who move to other states and/or service clients who purchase insurance in the state where the agent is licensed but who reside or work in another."
Douglas responded, arguing that, under the terms of the agreement, her retaliatory-discharge claim is not subject to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), because Liberty National filed its motion to stay more than 60 days after she filed her complaint. She also argued that part of the consideration for the employment agreement was continued employment with Liberty National and that, because Liberty National discharged her, the employment agreement is void for lack of consideration.
The trial court heard oral argument on Liberty National's motion to stay and, on its own motion, raised the issue whether Douglas's at-will employment as an insurance agent with Liberty National sufficiently involved interstate commerce so as to invoke the FAA. The trial court allowed Liberty National to submit additional authority on the interstate-commerce issue. In its supplemental reply, Liberty National discussed the factors that supported its contention that the employment agreement evidenced a transaction that substantially affected interstate commerce:
 "As previously stated, Liberty National is a corporation licensed to sell insurance in nearly every state. Throughout the years, Liberty National has acquired many companies located in foreign states. Liberty National services policyholders *Page 809 
who held insurance policies with the foreign companies at the time of the acquisitions. In addition, Liberty National and its agents service clients who purchase insurance in Alabama but who work in other states or who have moved to other states. Douglas was hired by Liberty National as an insurance agent on or about February 23, 1998, and Liberty National fully anticipated that she, like Liberty National's other agents, would service clients located in foreign states. Douglas's job required her to drive her automobile extensively in order to call on clients. Throughout the course of her workday, Douglas purchased gasoline and other resources brought into Alabama from other states to enable her to perform her job duties. Douglas sold insurance policies to clients who paid premiums to Liberty National, which, in turn, invested the premiums collected in foreign enterprises. Liberty National also orders equipment and supplies from companies located in foreign states to be shipped across state lines into Alabama and frequently sends correspondence all over the country via the U.S. Mail and Federal Express."
The trial court denied Liberty National's motion to stay the retaliatory-discharge proceedings, concluding that Liberty National had "failed to meet its burden of showing that either Plaintiff's claim of wrongful termination or its original contract of hire with Plaintiff had or has a substantial effect on interstate commerce."
Liberty National moved to alter, amend, or vacate the trial court's order, arguing that the court erroneously held that Douglas's contract with Liberty National did not sufficiently affect interstate commerce so as to invoke the FAA. The trial court denied that motion. Liberty National appealed.
 II.
"An appeal is the proper procedure for challenging an interlocutory order denying a stay pending arbitration." Gold Kist, Inc. v. Baker,730 So.2d 614, 615 n. 1 (Ala. 1999). We review de novo a trial court's denial of a motion to stay pending arbitration. Tefco Fin. Co. v. Green,793 So.2d 755 (Ala. 2001); Green Tree Fin. Corp. v. Vintson, 753 So.2d 497,502 (Ala. 1999).[1]
The FAA provides:
 "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. The party trying to compel arbitration has the burden of proving the existence of a contract requiring arbitration and proving that that contract involves a transaction that substantially affects interstate commerce. Sisters of the Visitation v. Cochran PlasteringCo., 775 So.2d 759 (Ala. 2000); TranSouth Fin. Corp. v. Bell,739 So.2d 1110 (Ala. 1999).
Liberty National argues that it has met its burden of proving that the employment agreement had a substantial effect on interstate commerce because, it says, Douglas's duties and the activities she engaged in while performing her duties, in the aggregate, *Page 810 
substantially affected interstate commerce. Douglas disagrees. She contends that her job duties did not require her to perform any duties with Liberty National anywhere except within Alabama. In response, Liberty National argues that each policy serviced or sold by Douglas generated a premium for Liberty National, which Liberty National then used in its various business interests outside of Alabama.
We do not agree that Liberty National has met its burden. Liberty National cannot rely upon the ripple effect on interstate commerce of the payment of insurance premiums by Alabama insureds to an Alabama insurer as support for a conclusion that the employment agreement between Douglas and Liberty National had a substantial effect upon interstate commerce. See Southern United Fire Ins. Co. v. Knight, 736 So.2d 582 (Ala. 1999). Stripped of this evidentiary basis, we are left with Liberty National's "anticipation" that Douglas would service clients located outside Alabama if clients presently living in Alabama and serviced by Douglas should move to another state. However, Liberty National offered no evidence to show that such a situation had actually occurred. The contemplation of the parties does not establish a substantial effect on interstate commerce. We must look to what in fact occurred. Allied-Bruce TerminixCos. v. Dobson, 513 U.S. 265 (1995).
Liberty National also contends that the employment agreement substantially affected interstate commerce because Douglas purchased gasoline to operate her vehicle and because Liberty National purchased equipment and supplies that moved in interstate commerce. The fact that Douglas purchased gasoline to operate her vehicle, without quantification of the relation of that fact to her activities under the contract, does not, alone, tip the scale toward a finding that the employment agreement had a substantial effect on interstate commerce. Sisters of theVisitation, supra, 775 So.2d at 765-67. Likewise, the fact that Liberty National purchased interstate goods that it used in its business, without quantification or application to Douglas's situation, is also inadequate to support a finding that the employment agreement had a substantial effect on interstate commerce. Id.
Because we hold that the employment agreement did not substantially affect interstate commerce, we need not address the parties' other arguments. The trial court's order denying Liberty National's motion to stay the judicial proceedings involving the retaliatory-discharge claim is affirmed.
AFFIRMED.
Brown, Harwood, Woodall, and Stuart, JJ., concur.
Houston and Johnstone, JJ., concur specially.
Moore, C.J., concurs in the result.
See, J., dissents.
[1] Effective October 1, 2001, Rule 4(d), Ala.R.App.P., provides: "An order granting or denying a motion to compel arbitration is appealable as a matter of right, and any appeal from such an order must be taken within 42 days (6 weeks) of the date of the entry of the order, or within the time allowed by an extension pursuant to Rule 77(d), Alabama Rules of Civil Procedure."