841 So.2d 220 (2002)
BROOKFIELD CONSTRUCTION COMPANY and Mohommed Heyat
v.
Stephen H. VAN WEZEL and Nesta W. Van Wezel.
1010353.
Supreme Court of Alabama.
June 28, 2002.
John Martin Galese, Jeffrey L. Ingram, and David A. Norris of Galese & Ingram, P.C., Birmingham, for appellants.
Jesse P. Evans III and Michael B. Odom of Lange, Simpson, Robinson & Somerville, L.L.P., Birmingham, for appellees.
WOODALL, Justice.
Brookfield Construction Company ("Brookfield") and Mohommed Heyat appeal from an order denying their motion to compel arbitration of their dispute with Stephen H. Van Wezel and Nesta W. Van Wezel. We affirm.
This dispute is between Alabama residents over the construction of a new residence for the Van Wezels. The house was built by Heyat, the owner of Brookfield, a sole proprietorship. The Van Wezels were dissatisfied with Heyat's workmanship, and they sued Heyat and Brookfield on theories of breach of contract and breach of warranty and on various tort theories. The defendants moved to compel arbitration on the basis of a provision in a "Limited *221 New Home Warranty" issued by Brookfield to the Van Wezels. The trial court denied the motion, and the defendants appealed.
The burden of proof on the party seeking to compel arbitration is well established. "A motion to compel arbitration is analogous to a motion for a summary judgment." Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala.1999). "The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction substantially affecting interstate commerce." American Gen. Fin., Inc. v. Morton, 812 So.2d 282, 284-85 (Ala.2001) (plurality opinion). See Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000). "If the party seeking to enforce the arbitration agreement fails to make such a showing, then the opposing party has no burden of resisting arbitration and the motion should be denied." Brown v. Dewitt, Inc., 808 So.2d 11, 14 (Ala.2001).[1] The dispositive issue in this case is whether the defendants met their initial burden of showing that the construction of the Van Wezels' residence was a transaction that substantially affected interstate commerce, under the five-part test adopted in Sisters of the Visitation.
The test adopted in Sisters of the Visitation focuses on the quantity and quality of involvement of foreign entities with the subject transaction. Specifically, the subjects of inquiry are (1) the "citizenship of the parties," (2) the origin of any "tools and equipment" actually used in the transaction, (3) the "allocation of cost of services and materials," (4) the "subsequent movement across state lines" of the "object of the services," and (5) the "degree of separability from other contracts." 775 So.2d at 765-67. An analysis applying these factors is "necessarily fact-intensive." Id. at 765 n. 5.
In some cases, one or more of the factors will evidence no interstate commerce, as where both parties are Alabama residents. In some cases, the factors will demonstrate only a de minimis involvement with interstate commerce. Aronov Realty Brokerage, Inc. v. Morris, 838 So.2d 348 (Ala.2002) (plurality). Thus, for this Court to apply the factors enumerated in Sisters of the Visitation, the record must contain more than conclusory statements that the transaction "substantially involved interstate commerce."
At least three of those factors require specific evidence of the relationship between interstate and local elements of the transaction. More specifically, the second factor cannot support arbitrability unless the record demonstrates the extent to which tools and equipment moving interstate were "leased or purchased specially for the project." 775 So.2d at 766. The third factor cannot support arbitrability, unless the record demonstrates "what portion of the amount [of the contract price] is allocable to the cost of local labor and overhead and what portion is allocable to materials or services specially purchased for use or consumption in performance of the contract." Id. (emphasis added). The fifth factor cannot support arbitrability, unless the record demonstrates the extent of the subject transaction's "impact on other contracts that do substantially affect interstate commerce." Id. at 767 (emphasis added).
*222 In an attempt to satisfy their burden under Sisters of the Visitation, the defendants submitted Heyat's affidavit, which stated: "The Plaintiffs' home was constructed in Shelby County, Alabama in significant part from goods and supplies manufactured out of state and shipped into Alabama for incorporation therein. Various subcontractors were engaged, who traveled in interstate commerce in connection with completing their work on this home." The defendants' evidence is insufficient, for the same reasons the evidence in Sisters of the Visitation was insufficient, to prove that the transaction substantially affected interstate commerce.
The parties are Alabama residents, and the object of the transaction, namely, the Van Wezels' residence, is incapable of moving across state lines. Heyat's affidavit contains the conclusory allegation that the residence was constructed "in significant part from goods and supplies manufactured out of state and shipped into Alabama for incorporation therein." The record here, like the record in Sisters of the Visitation, fails to demonstrate "what portion of the amount [of the contract price] is allocable to the cost of local labor and overhead," and fails to show the extent to which tools and equipment moving interstate were "leased or purchased specially for the project." 775 So.2d at 766. Heyat's affidavit also alleges that "[v]arious subcontractors were engaged, who traveled in interstate commerce in connection with completing their work on this home." However, as in Sisters of the Visitation, the record fails to demonstrate the extent of the construction project's "impact on other contracts that do substantially affect interstate commerce." Id. at 767 (emphasis added).
Because the defendants failed to offer specific evidence of the relationship between the interstate and local elements involved in the construction of the Van Wezels' house, they failed to carry their initial burden of proof on the issue of interstate commerce. See also Morris, supra; Ex parte Kampis, 826 So.2d 819 (Ala. 2002); F.A. Dobbs & Sons, Inc. v. Northcutt, 819 So.2d 607 (Ala.2001). The trial court did not err, therefore, in denying their motion to compel arbitration. Its order is affirmed.
AFFIRMED.
HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., concurs in the result.
SEE, J., dissents.
SEE, Justice (dissenting).
The main opinion states that "[t]he dispositive issue in this case is whether the defendants met their initial burden of showing that the construction of the Van Wezels' residence was a transaction that substantially affected interstate commerce, under the five-part test adopted in Sisters of the Visitation [v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000) ]" (emphasis added). I respectfully dissent.

Background
On or about August 16, 1999, Stephen H. Van Wezel and Nesta W. Van Wezel entered into a contract with Brookfield Construction Company to purchase a new house. Brookfield issued a "Limited New Home Warranty" that contained the following arbitration agreement:
"Purchaser and Seller agree that any claim or dispute arising out of this Limited New Home Warranty will be submitted to mediation and in the event no mediation resolution is reached, then to binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association *223 currently in effect; and that the parties hereto shall be bound by the result thereof."
Neither party signed the "Limited New Home Warranty."
On October 24, 2000, the Van Wezels sued Brookfield and its owner, Mohommed Heyat. The Van Wezels alleged in paragraphs 29 and 30 of their complaint that the residence was sold to them with a "Limited New Home Warranty" and that Brookfield and Heyat "have refused to comply with the requirements of any and all warranties, even though the Van Wezels requested on numerous occasions" that Brookfield and Heyat repair all defects. In their complaint, the Van Wezels also alleged breach of contract, negligence, recklessness, fraud, and suppression.
Brookfield and Heyat moved to compel binding arbitration pursuant to the provisions of the written arbitration agreement. In support of their "Motion to Compel Binding Arbitration," they filed a supporting brief and the affidavit of Mohommed Heyat. In his affidavit, Heyat stated:
"At all times hereto I have been the owner of Brookfield Construction Company, a sole proprietorship. I was actively involved in all aspects of the construction of the Plaintiffs' home, described in the Complaint.
"The Plaintiffs' home was constructed in Shelby County, Alabama in significant part from goods and supplies manufactured out of state and shipped into Alabama for incorporation therein. Various subcontractors were engaged, who traveled in interstate commerce in connection with completing work on this home. The home was constructed according to national building codes promulgated by organizations foreign to Alabama. The Plaintiffs received a limited home warranty in connection with this home. The limited warranty contained an arbitration agreement covering the resolution of all disputes involving any damages from defects in any item covered by the warranty provided to them by me. The Plaintiffs have brought [a] claim against me in this action for an alleged breach of that very written warranty containing an arbitration agreement. A true and correct copy has been attached to the motion to compel arbitration."
Without explanation, the trial court denied Brookfield and Heyat's motion to compel arbitration and set the case for trial. Brookfield and Heyat appealed that denial to this Court.[2]

Standard of Review
This Court reviews de novo a trial court's denial of a motion to compel arbitration. Tefco Fin. Co. v. Green, 793 So.2d 755 (Ala.2001); Green Tree Fin. Corp. v. Vintson, 753 So.2d 497, 502 (Ala. 1999). This Court has held that "`to prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim,'" Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 (Ala.1995) (opinion on rehearing) (quoting In re American Freight Sys., Inc., 164 B.R. 341, 345 (D.Kan.1994)), and "`has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce,'" Tefco Fin. Co. v. Green, 793 So.2d at 758 (quoting Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala.1999)) (emphasis added).

*224 Commerce Clause Jurisprudence

In 1824, in Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824), the Supreme Court of the United States addressed the scope of the Commerce Clause. The New York Legislature had granted Ogden a monopoly "right to navigate waters" between Elizabethtown, New Jersey, and New York, New York. Id. Gibbons had infringed that right by operating two ships on the Elizabethtown-New York route, and the New York court had enjoined Gibbons's operation. The Supreme Court of the United States reversed, finding that navigation was commerce and that Congress's power over commerce preempted New York's licensing scheme. Chief Justice Marshall, writing for the Court, stated:
"Commerce, undoubtedly, is traffic, but it is something more: it is intercourse....
". . . .
"The subject to which the power is next applied, is to commerce `among the several States.' The word `among' means intermingled with. A thing which is among others, is intermingled with them. Commerce among the States, cannot stop at the external boundary line of each State, but may be introduced into the interior."
22 U.S. (9 Wheat.) at 189-94. Chief Justice Marshall continued:
"It is not intended to say that these words comprehend that commerce, which is completely internal, which is carried on between man and man in a State, or between different parts of the same State, and which does not extend to or affect other States....
"... The genius and character of the whole government seem to be, that its action is to be applied to all the external concerns of the nation, and to those internal concerns which affect the States generally; but not to those which are completely within a particular State, which do not affect other States, and with which it is not necessary to interfere, for the purpose of executing some of the general powers of the government."
22 U.S. (9 Wheat.) at 194-95. Nonetheless, it was not until 1887 that the passage of the Interstate Commerce Act, 15 U.S.C. § 1, "ushered in a new era of federal regulation under the commerce power." United States v. Lopez, 514 U.S. 549, 554, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Then, in 1937, in response to the New Deal legislation, the Supreme Court of the United States upheld the National Labor Relations Act and the National Labor Relations Board's decision to end the practice of discharging employees for union activity. NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937).[3] The Supreme Court held that intrastate activities could "have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions ...." Id. at 37, 57 S.Ct. 615.
Four years later, the Supreme Court upheld the Fair Labor Standards Act, which regulated the hours and wages of employees engaged in local manufacturing and prohibited the shipment of goods produced by manufacturers that were paying their employees less than the prescribed minimum wage or that were requiring more than the prescribed maximum number *225 of hours of work. United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941). In Darby, the Court reaffirmed the notion that substantial intrastate activities could affect interstate commerce. Subsequently, the Supreme Court stated that "[a]ctivities that affected interstate commerce directly were within Congress' power; activities that affected interstate commerce indirectly were beyond Congress' reach." Lopez, 514 U.S. at 555, 115 S.Ct. 1624, citing A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 546, 55 S.Ct. 837, 79 L.Ed. 1570 (1935)(emphasis added).
In 1942, in Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), the Supreme Court of the United States held that, under the Commerce Clause, Congress had the power to limit the production of wheat by a farmer who had sowed 23 acres of wheat for consumption on his own farm.[4] The Supreme Court instructed, first, that in weighing the effect of an activity on interstate commerce, courts are to consider the aggregate effect of that type of activity on interstate commerce. 317 U.S. at 124-28, 63 S.Ct. 82; see also Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 277, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); Tefco Fin. Co., 793 So.2d at 759. Furthermore, the Wickard Court expressly rejected the earlier "direct-/indirect-effects" analysis of interstate commerce; thus, the Court stated:
"[E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce, and this irrespective of whether such effect is what might at some earlier time have been defined as `direct' or `indirect.'"[5]
317 U.S. at 125, 63 S.Ct. 82. The Wickard Court noted that the fact that Filburn's contribution to the demand for wheat "may be trivial by itself is not enough to remove him from the scope of federal regulation, where ... his contribution, taken together with that of many others similarly situated, is far from trivial." Id. at 127-28, 63 S.Ct. 82.
For over 50 years, following Wickard and up until Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626, the Supreme Court did not overturn a congressional act on the basis that the act violated the Commerce Clause. Then, in Lopez, the Supreme Court found that the relationship between the Gun-Free School Zones Act and interstate *226 commerce was too attenuated to find a substantial effect on commerce.[6] Lopez was convicted of possession of a firearm in a school zone in violation of the Gun-Free School Zones Act. Reviewing several Commerce Clause cases, the Court identified three categories of activity Congress may regulate under its commerce power:
"First, Congress may regulate the use of the channels of interstate commerce.... Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.... Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, ... i.e., those activities that substantially affect interstate commerce."
514 U.S. at 558-59, 115 S.Ct. 1624.
The government had argued in Lopez that crime in and around schools has a substantial effect on interstate commerce because "the costs of violent crime are substantial" and "violent crime reduces the willingness of individuals to travel to areas within the country that are perceived to be unsafe." Id. at 563-64, 115 S.Ct. 1624. The Supreme Court, however, refused to accept the government's argument because, it reasoned, the Gun-Free School Zones Act had "nothing to do with `commerce.' "[7]Id. at 561, 115 S.Ct. 1624. Lopez did not overrule Wickard, but instead restricted the application of the Commerce Clause power to matters of commerce.

The Federal Arbitration Act
The Supreme Court of the United States held in Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282 (1932), that the Federal Arbitration Act ("the FAA") is a constitutional exercise of Congress's power. The FAA provides:
"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. "The [FAA] preempts contrary state law (specifically, contrary law based on Ala.Code 1975, § 8-1-41(3),[[8]] and public policy) and renders enforceable a written predispute arbitration agreement but only if that agreement appears in a contract evidencing a transaction that `involves' interstate commerce." Southern United Fire Ins. Co. v. Knight, 736 So.2d 582, 585-86 (Ala.1999); see Tefco Fin. Co. v. Green, supra.
The Supreme Court of the United States has broadly interpreted the term "involving commerce" as being the "functional equivalent" of the phrase "affecting commerce." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 274, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Congress's use of the phrase "affecting commerce" "normally signals Congress' intent to exercise its *227 Commerce Clause powers to the full ...." Id. at 273, 115 S.Ct. 834.
In Sisters of the Visitation v. Cochran, 775 So.2d 759 (Ala.2000), the Sisters of the Visitation contracted with an in-state contractor to renovate a chapel located in Alabama and owned by the Sisters. Pursuant to an arbitration provision in the contract, the Sisters sought arbitration of their dispute with the contractor. In my dissent in that case, I noted that the majority held that the FAA can apply to a contract only if that "individual transaction `substantially affect[s]' interstate commerce." 775 So.2d at 782. Since our decision in Sisters of the Visitation in March 2000, this Court has routinely denied a party the right to arbitration where that party failed to prove that the individual transaction substantially affected interstate commerce. See Aronov Realty Brokerage, Inc. v. Morris, 838 So.2d 348 (Ala. 2002) (denying arbitration in an action brought by a purchaser of a condominium unit against a real estate brokerage, real estate agent, and condominium association); Liberty Nat'l Life Ins. Co. v. Douglas, 826 So.2d 806 (Ala.2002) (refusing to compel arbitration where an employee of an insurance company sued her employer); Ex parte Kampis, 826 So.2d 819 (Ala.2002) (denying arbitration in an action brought by a home purchaser against a contractor); Alternative Fin. Solutions, LLC v. Colburn, 821 So.2d 981 (Ala.2001) (denying arbitration where borrowers brought an action against lenders challenging the legality of certain loans); Ex parte Learakos, 826 So.2d 782 (Ala.2001)(denying arbitration in an action brought by a home purchaser against a real estate company and its agents).
The Supreme Court of the United States stated in Lopez that in order for a federal statute that regulates commercial transactions to be a valid exercise of Congress's Commerce Clause power, the aggregate nationwide participation in that activity not the individual transaction in isolation must "substantially affect" interstate commerce. Lopez, 514 U.S. 556-57, 115 S.Ct. 1624. This "substantial-effect" testused to determine the constitutionality of a statute under the Commerce Clausewas not a new standard created in Lopez, but has been the test of a statute's constitutionality since the early twentieth century. Id. at 555-57, 115 S.Ct. 1624.
Once it has been determined that Congress acted within its Commerce Clause power in enacting a statute, whether that statute reaches certain activities does not depend on whether that individual act, when considered separately from all similar acts, has a substantial effect on commerce. As Wickard made clear, Filburn's "trivial" wheat production could be reached by the Agricultural Adjustment Act. The standard established by the Supreme Court of the United States is that "`where a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.' " Lopez, 514 U.S. at 558, 115 S.Ct. 1624 (quoting Maryland v. Wirtz, 392 U.S. 183, 197 n. 27, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968)).
The standard for the application of the FAA to an individual contract was made clear in Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 267, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). The FAA provides in pertinent part that "[a] written provision in ... a contract evidencing a transaction involving commerce ... shall be valid...." 9 U.S.C. § 2 (emphasis added). The Supreme Court of the United States held in Allied-Bruce Terminix that the requirement in the FAA that an individual contract involve interstate commerce should be read in the broadest possible *228 terms because the word "involving" signals "an intent to exercise Congress' commerce power to the full." 513 U.S. at 277, 115 S.Ct. 834. The Court also stated that to be subject to the FAA a contract did not have to evidence a transaction that was "`substantially' interstate." Id. at 269, 115 S.Ct. 834.
Thus, I believe this Court erred when it held in Sisters of the Visitation that a particular contract, in order to be enforceable under the FAA must, by itself, have a substantial effect on interstate commerce, and this Court errs again today by applying the Sisters of the Visitation standard to this case.
Courts have recognized the substantial impact that the residential housing market has upon interstate commerce. Senior Civil Liberties Ass'n v. Kemp, 965 F.2d 1030, 1033-34 (11th Cir.1992); Morgan v. Secretary of Housing & Urban Dev., 985 F.2d 1451 (10th Cir.1993). In Kemp, the United States Court of Appeals for the Eleventh Circuit expressly held that the housing market affected interstate commerce:
"Because Congress had a rational basis for amending the Fair Housing Act namely, the nationwide problem caused by familial status discrimination in the housing marketand because the housing market affects interstate commerce, plaintiffs' Tenth Amendment claim fails."
965 F.2d at 1034 (emphasis added).
In Southern Energy Homes, Inc. v. McCray, 788 So.2d 882, 883 (Ala.2000), this Court held that the purchase of a home manufactured in Alabama involved interstate commerce where the home was constructed from parts acquired outside of Alabama. Here, Brookfield and Heyat assert in their brief to this Court that according to the United States Department of Commerce, the gross domestic product for the residential real estate market in the year 2000 represented over 4% of the gross domestic product and approximately 24% of gross private domestic investment. Moreover, Heyat states in his affidavit that the Van Wezels' house was constructed
"in significant part from goods and supplies manufactured out of state and shipped into Alabama for incorporation therein. Various subcontractors were engaged, who traveled in interstate commerce in connection with completing work on this home. The home was constructed according to national building codes promulgated by organizations foreign to Alabama."
Therefore, although it is undisputed that the contract for the sale and construction of the Van Wezels' house is a transaction that occurred within Alabama, Brookfield and Heyat have presented the requisite "`some evidence which tends to establish [their] claim,'" Jim Burke Auto., Inc. v. Beavers, 674 So.2d at 1265 (opinion on rehearing) (quoting In re American Freight Sys., Inc., 164 B.R. at 345), that the construction of the Van Wezels' house, considered in the aggregate, substantially affects interstate commerce.
Brookfield and Heyat have shown that the "Limited New Home Warranty" provides for binding arbitration. Although the Van Wezels did not sign the warranty, the arbitration provision is nevertheless enforceable because the Van Wezels have brought a claim alleging a breach of that agreement. Ex parte Dyess, 709 So.2d 447, 451 (Ala.1997) (stating that a party who seeks the benefits of a contract is bound by all provisions of the contract, not just those he chooses to enforce).
The trial court should have enforced the written arbitration agreement contained in the "Limited New Home Warranty." I would reverse the trial court's order denying *229 the motion to compel arbitration and remand the case for compliance with the arbitration agreement in the "Limited New Home Warranty."[9]
NOTES
[1] The arbitration proponent must demonstrate a substantial nexus with interstate commerce in order to render the arbitration clause enforceable through the Federal Arbitration Act, 9 U.S.C. § 1 et seq.
[2] Rule 4(d), Ala. R.App. P., effective October 1, 2001, provides: "An order granting or denying a motion to compel arbitration is appealable as a matter of right, and any appeal from such an order must be taken within 42 days (6 weeks) of the date of the entry of the order, or within the time allowed by an extension pursuant to Rule 77(d), Alabama Rules of Civil Procedure."
[3] In NLRB v. Jones & Laughlin Steel Corp., the National Labor Relations Act was challenged in its entirety as an attempt to regulate not only commerce but all industry; however, the Court addressed only the actions that burdened or obstructed commerce.
[4] Filburn had challenged the constitutionality of the Agricultural Adjustment Act, which established a wheat-acreage allotment of 11.1 acres and a normal yield of 20.1 bushels of wheat per acre. Wickard, 317 U.S. at 114, 63 S.Ct. 82.
[5] In Sisters of the Visitation v. Cochran, 775 So.2d 759, 764 (Ala.2000), the case on which the majority relies for its decision, a majority of this Court, interpreting Wickard, stated:

"[W]e conclude that the question whether the actions of an individual, which actions standing alone would be considered `local' actions or actions with only an `indirect' influence on interstate commerce, may be considered to have a substantial influence on interstate commerce is to be determined by considering how critical the regulation of all similarly situated persons' activity is to the accomplishment of the primary purpose of a statute drawn to regulate an activity clearly having a substantial effect on interstate commerce."
Thus, in Sisters of the Visitation this Court purported to modify the United States Supreme Court's Wickard decision to exclude local or indirect effects unless those effects are sufficiently "critical" to the primary purpose of the statute. In the language recited from Wickard, the United States Supreme Court expressly rejected this kind of direct-indirect analysis; it was rejected for good reason because of the infinite malleability of the concept of directness. Wickard, 317 U.S. at 125, 63 S.Ct. 82.
[6] Justice Kennedy, concurring specially, and joined by Justice O'Connor, said that the Gun-Free School Zones Act "upsets the federal balance to a degree that renders it an unconstitutional assertion of the commerce power ...." Lopez, 514 U.S. at 580, 115 S.Ct. 1624 (Kennedy, J., concurring specially).
[7] The Court noted that if the Gun-Free School Zones Act passed constitutional muster, "it is difficult to perceive any limitation on federal power ...." 514 U.S. at 564, 115 S.Ct. 1624.
[8] Alabama Code 1975, § 8-1-41(3), makes void any agreement to arbitrate future, as opposed to present, disputes.
[9] The arbitration agreement requires that the parties submit their dispute first to mediation and then, if the dispute is not resolved by mediation, to binding arbitration.