Elbert Caver, the plaintiff in an action pending in the Marengo Circuit Court, petitions for a writ of mandamus directing the circuit court to set aside its order granting a motion to compel arbitration filed by the defendants Liberty National Life Insurance Company ("Liberty National") and one of its agents, Ernest Taylor.[1] The writ is denied.
Caver sued Liberty National and Taylor on March 3, 1998, seeking damages based on allegations of breach of contract, fraud, and bad-faith failure to pay an insurance claim. Caver's action arose out of Liberty National's refusal to pay life insurance benefits under two policies insuring the life of Caver's wife, Sarah, and naming Elbert Caver as the beneficiary. The record indicates that on or about January 11, 1994, Liberty National sold a life insurance policy to Elbert Caver; that policy, for the face amount of $5,934, named Sarah Caver as the insured. The effective date of that policy was March 1, 1994. Caver alleges that Taylor assisted the Cavers in preparing the application for that policy. Liberty National later sold two additional life insurance policies to Sarah Caver, each providing $5,000 in coverage on her life. Caver says Taylor assisted the Cavers in preparing the applications for those policies also. The first of those policies became effective April 1, 1996; the second became effective October 1, 1996. On July 23, 1997, Sarah Caver died of complications from bladder cancer.
Liberty National denied Elbert Caver's claim for life insurance benefits under the April 1, 1996, and October 1, 1996, policies; it took the position that Sarah Caver had misrepresented her medical history when applying for those policies. (Liberty National also argues that it issued the April 1, 1996, and October 1, 1996, policies in reliance on the information Sarah Caver had provided in her 1994 application.) Liberty National did pay the face amount of the March 1, 1994, policy ($5,934); that policy was outside the two-year contestability period provided for in that policy. It was Liberty National's refusal to pay under the April 1, 1996, and October 1, 1996, policies that formed the basis for Caver's complaint. Caver alleged that Taylor had knowingly misrepresented Sarah Caver's medical history on the applications and that when he did that he knew, contrary to what he told the Cavers, that those misrepresentations would void the policies.
Liberty National and Taylor moved to compel arbitration of Caver's claims and supported their motion with certain exhibits *Page 170 
and two affidavits of Liberty National's president, Anthony McWhorter. Two of those exhibits were computer-generated reproductions of the April 1, 1996, and October 1, 1996, policies. Those policy reproductions contained arbitration provisions as endorsements to the policies.[2] Each of those policy reproductions contained the following "Notice of Policy Reproduction":
 "Liberty National Life Insurance Company does not maintain copies of original policies that are issued to its customers. This policy is a reproduction of the original policy. The reproduced policy is a reasonable facsimile of the original; however, it may differ in certain respects. Liberty National Life Insurance Company does not in any way represent or certify that this is an exact duplication of the original policy that was issued."
McWhorter, in his second affidavit, explained the nature of this notice:
 "I have been informed that [the] plaintiff has suggested that the `Notice of Policy Reproduction' shown in Exhibit A to Liberty National's Motion to Compel Arbitration, etc., somehow calls into question whether or not the arbitration clauses contained in said exhibit are identical to the arbitration clauses that were contained in the original policies issued to [the] plaintiff on or about April 1, 1996, and October 1, 1996, respectively. In fact, the `Notice of Policy Reproduction' was never intended to, and does not in any way, indicate any actual or potential variation in the arbitration clause shown in the reproduced policies and the arbitration clause contained in the original policies issued to [the] plaintiff. In fact, the arbitration endorsement shown in the reproduced policy attached as Exhibit A to Liberty National's Motion to Compel Arbitration, etc., in this action is identical to the arbitration endorsement that was in fact included in the original policies issued and delivered to [the] plaintiff. *Page 171 
 "The arbitration clause utilized by Liberty National in [the] plaintiff's policies was the same arbitration clause and endorsement utilized in all Liberty National policies issued beginning July, 1995. The arbitration endorsement required approval by the Alabama Department of Insurance. Attached hereto as Exhibit 1 is a copy of the only Liberty National arbitration endorsement approved by the Alabama Department of Insurance prior to issuance of plaintiff's policies. [Exhibit 1 is omitted from this opinion.] It is identical to the arbitration endorsement included in the reproduced policy attached as Exhibit A to Liberty National's Motion to Compel Arbitration in this action, and it is identical to the arbitration endorsement that was in fact included in the original policy issued and delivered to [the] plaintiff.
 "The `Notice of Policy Reproduction' was not intended to indicate any actual or potential variation in the language of the arbitration endorsement. Instead, because reproduced policies are generated by computer, they may vary slightly in minor details such as printing format, premium mode, the name of the Liberty National officer signing the policies, and overall appearance from the original policy form. Therefore, out of an abundance of caution, the `Notice of Policy Reproduction' is included by Liberty National as a matter of course whenever a policy is reproduced for purposes of litigation. However, the `Notice of Policy Reproduction' does not refer to, and is not intended to refer to, any actual or potential variation in the language of the arbitration endorsement. There is no variation in the language of said endorsement."
Caver amended his complaint, to allege specifically that Liberty National, through Taylor, had fraudulently induced him to purchase policies that contained arbitration provisions. He sought damages for that alleged fraud; he also sought to rescind the arbitration provisions on that ground. Caver later filed an affidavit in response to McWhorter's second affidavit, and in it Caver suggested that he had never received any policy containing an arbitration provision:
 "I have carefully examined Exhibit A of the defendant's April 9, 1998, Motion to Compel Arbitration, et al. [sic], and the Exhibit A of the defendant's February 16, 1999, Notice of filing of Supplemental Affidavit of Anthony McWhorter.
 "I do not recognize the Exhibit A, of the April 9, 1998, Motion to Compel, as an accurate and true copy of the original policy that I received from the defendant. Further, I do not recognize the Exhibit A, of the February 16, 1999, Notice of Filing of Affidavit, as a copy [of] any endorsement that I may have received from the defendant.
 "Also, I do not recall an endorsement containing an arbitration agreement, in the original policy that I received from the defendant.
 "I cannot certify that the exhibits contained in the above-described motions are exact duplications of the original policies and/or endorsements issued to me."
After conducting a hearing, and after "[considering] the evidence submitted by the parties and [hearing] oral argument," the trial court granted the motion to compel arbitration. The court apparently found that the April 1, 1996, policy and the October 1, 1996, policy contained arbitration provisions. The trial court also stated, "Liberty National's motion to strike the jury demand is stayed pending a determination by the arbitrators as to the enforceability of the arbitration clause."
It is well settled that mandamus is an extraordinary remedy and requires, among other things, a clear legal right in the petitioner to the order sought and an imperative duty on the respondent to perform, accompanied by a refusal to do so. Exparte Gates, 675 So.2d 371 (Ala. 1996). Caver makes two alternative arguments in support of his request for mandamus *Page 172 
relief: 1) that the trial court clearly erred in finding that the April 1, 1996, and October 1, 1996, policies contained arbitration provisions; and 2) that the trial court clearly erred in failing to find that he had been fraudulently induced to purchase policies that contained arbitration provisions.[3]
With respect to the first argument, we cannot conclude that the trial court clearly erred in finding that Caver's policies contained arbitration provisions. McWhorter explained in his second affidavit the nature of the policy reproductions; he stated that "[t]he arbitration clause utilized by Liberty National in [Caver's] policies was the same arbitration clause and endorsement utilized in all Liberty National policies issued beginning July, 1995." McWhorter also stated that the arbitration provision that had been approved by the Alabama Department of Insurance was identical to the arbitration provisions that had been shown as endorsements to the reproduced policies attached as Exhibit A to Liberty National's motion to compel arbitration and that it was identical to the arbitration provisions that had been included as endorsements to the original policies issued and delivered to the Cavers. Caver did not produce the original policies to show that they contained no arbitration provisions or that they contained different arbitration provisions — nor did he present any evidence indicating that he could no longer produce the original policies. Caver merely testified that he did not "recognize" the reproduced policies as being accurate copies of the policies he had received and that he did not "recall" seeing an arbitration provision in his policies. He did admit that he had received the original policies. The trial court's finding in this regard is supported by credible evidence. No clear error is apparent on the record.[4]
The gravamen of Caver's second argument is that Taylor was under an affirmative fiduciary duty to tell him that the policies he was applying for would contain arbitration provisions. We note, however, that Caver filed his complaint on March 3, 1998; therefore, the "reasonable reliance" standard applies to his fraud allegations. See Foremost Ins. Co. v. Parham, 693 So.2d 409
(Ala. 1997). Foremost ended the era of "ostrichism" that had been heralded in when this Court adopted the "justifiable reliance" standard in Hickox v. Stover, 551 So.2d 259 (Ala. 1989), and it foreclosed the right of a person to blindly rely on an agent's oral representations or silence to the exclusion of written *Page 173 
disclosures in a policy. The trial court found that the arbitration provisions at issue in this present case were disclosed in the policies received by Caver. The April 1, 1996, policy contained a 10-day "free look" provision; the October 1, 1996, policy contained a 20-day "free look" provision. The wording of those provisions, which was the same in both policies, was as follows:
 "Please examine your policy. Within [10 or 20 days, depending on the policy] after this policy is first received, it may be returned to us or the agent through whom it was purchased. If returned, the policy will be as though it had never been issued. Any premiums paid will be returned."
Thus, the record indicates that Caver had an opportunity to examine his policies and to cancel them for a full premium refund if he did not agree with the policies' terms. Caver presented no evidence indicating that he could not have read and understood the arbitration provisions contained in his policies. Based on the record before us, we cannot conclude that Liberty National, through Taylor, owed Caver a duty to orally disclose the presence of the arbitration provisions. See Ex parte Rager, 712 So.2d 333
(Ala. 1998); Green Tree Agency, Inc. v. White, 719 So.2d 1179
(Ala. 1998); First Family Financial Services, Inc. v. Rogers, [Ms. 1972163, March 19, 1999] 736 So.2d 553 (Ala. 1999).
We note that the trial court's order states that the preliminary issue of arbitrability is to be determined by an arbitrator. However, Caver specifically challenged the arbitration provisions, alleging that he and his wife had been fraudulently induced to purchase policies containing those provisions. He specifically sought rescission of the arbitration provisions on fraud grounds. Under these circumstances, which indicate that Liberty National was under no duty to orally disclose the existence of the arbitration provisions, the trial court properly determined the validity of the arbitration provisions. See Ex parte Foster, [Ms. 1972306, August 20, 1999] ___ So.2d ___ (Ala. 1999).
Because Caver has demonstrated no clear error and no imperative duty on the part of the trial court to perform, the petition for the writ of mandamus is due to be denied.
WRIT DENIED.
Hooper, C. J., and Maddox, Cook, See, Lyons, and Brown, JJ., concur.
[1] A petition for the writ of mandamus is the proper means by which to challenge a trial court's order granting a motion to compel arbitration. See Thompson v. Skipper Real Estate Co.,729 So.2d 287 (Ala. 1999). Although Caver filed a document styled as a "notice of appeal," we will treat his filing as being, in reality, a petition for a writ of mandamus. See Ex parte Burch,730 So.2d 143 (Ala. 1999).
[2] Each of the arbitration provisions stated:
 "In the event of any dispute, claim question [sic], or disagreement arising out of or relating to this policy, the parties shall use their best efforts to settle such disputes. To this effect, they shall negotiate with each other in good faith to reach a just solution.
 "If the parties do not reach a solution by negotiation as described above within sixty (60) days, then upon written notice by either party to the other, all disputes, claims, questions and controversies of any kind or nature arising out of, or relating [in] any way to, this policy, its subject matter, its negotiation, issuance or termination shall be submitted to binding arbitration pursuant to the provisions of the Federal Arbitration Act and according to the Arbitration Rules of the American Arbitration Association then in effect. Sixty (60) days as used in this provision shall be deemed to begin on the first day any dispute, question, or disagreement is communicated by one party to this agreement to the other party. In the case of claims made pursuant to this policy the sixty (60) day period shall begin to run on the day on which due proof of claim is filed with the Company and no further information is needed in order for the Company to make a decision on the claim. The findings of the arbitrator shall be final and binding on both parties and their beneficiaries, successors, assigns or anyone claiming an interest in this policy. Disputes which will be subject to this agreement include, but are not limited to, the following areas: interpretation of the policy; benefit payments; ownership; beneficiary designation; assignment; replacement; conversion; reinstatement; premium payments; sales representations or sales presentations; the taking of the application; information contained in the application; agent conduct; any claim alleging fraud, deceit, or suppression of any material fact; or any other matter arising out of or relating in any way to this policy or your relationship with the Company, its agents, servants, employees, officers, directors and affiliate companies. Judgment upon the award entered by the arbitrator shall be binding and may be enforced in any court having jurisdiction. To give the Company written notice you should address your letter as follows:
"[Liberty National's address]
 "Each party shall bear its own cost of arbitration and administrative fees shall be apportioned by the arbitrator in his or her award.
"All other policy provisions remain unchanged."
(Emphasis added by Liberty National.)
[3] Caver does not argue that the April 1, 1996, and October 1, 1996, policies do not involve interstate commerce and, thus, that they are not subject to the Federal Arbitration Act, 9 U.S.C. § 1
et seq. ("FAA"). Likewise, Caver does not argue that the McCarran-Ferguson Insurance Regulation Act, 15 U.S.C. § 1011 et seq. ("McCarran-Ferguson Act"), applies to the insurance policies so as to preclude the preemptive effect of the FAA and thereby render applicable Ala. Code 1975, § 8-1-41(3). In any event, we note that this Court recently held that the McCarran-Ferguson Act does not apply to policies of insurance so as to preclude the preemptive effect of the FAA. See American Bankers Ins. Co. ofFlorida v. Crawford, [Ms. 1972245, July 30, 1999] ___ So.2d ___ (Ala. 1999).
[4] A motion to compel arbitration is analogous to a motion for a summary judgment. The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce. Once such a prima facie showing has been made, the burden shifts to the party opposing arbitration to present some evidence indicating that there is no arbitration agreement subject to specific enforcement under the FAA. SeeTransouth Financial Corp. v. Bell, 739 So.2d 1110 (Ala. 1999). If the party opposing arbitration presents sufficient evidence to create a fact question as to the existence of a valid arbitration agreement, then the issue must be resolved by the trial court or by a jury, if one is requested. See Allstar Homes, Inc. v. Waters,711 So.2d 924 (Ala. 1997); see also Ex parte Shelton,738 So.2d 864 (Ala. 1999); Infiniti of Mobile, Inc. v. Office,727 So.2d 42 (Ala. 1999). Nothing in the record indicates that Caver requested that a jury determine whether the August 1, 1996, and October 1, 1996, policies contained arbitration provisions.