[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 350 
The defendants in these four consolidated cases: (1) Aronov Realty Brokerage, Inc. (hereinafter individually referred to as "Aronov") (case no. 1001292); (2) Benjamin Vance (case no. 1001650); (3) Havenwood Village, Inc., Havenwood Village Condominium Association, Inc., Havenwood Village Condominiums, Janice Vance, Arthur D. Baylor, and Barry D. Ross (hereinafter collectively referred to as "Havenwood") (case no. 1001733); and (4) Elizabeth Maxwell (case no. 1010456) (all these defendants hereinafter sometimes collectively referred to as "the defendants") appeal the trial court's denial of their motions to compel arbitration.[1] We affirm.
 I. Facts and Procedural History
On August 25, 2000, Dorothy D. Morris filed a complaint in the Circuit Court of Montgomery County against Aronov, Benjamin Vance, and Havenwood, alleging fraud, negligence, negligent supervision and training, misrepresentation and suppression, breach of fiduciary duty, wantonness, conversion, conspiracy, and breach of contract, all in regard to her purchase of a condominium unit. Benjamin Vance, Janice Vance, Baylor, and Ross were sued individually as members of the board of directors of the Havenwood Village Condominium Association, Inc., and were specifically named in those counts of Morris's complaint alleging breach of fiduciary duty and conversion. Maxwell, identified in Morris's complaint as an employee or agent of Aronov and Havenwood Village, Inc., was subsequently added as a defendant when the trial court granted Morris's motion to amend her complaint on February 6, 2001.[2] Morris's complaint alleged that she had purchased a condominium unit at the Havenwood Village Condominiums in reliance upon certain representations made by Maxwell, acting within the scope of her employment or agency with Aronov and Havenwood Village, Inc. Morris's complaint further alleged that at the closing of her condominium purchase, Maxwell and Janice Vance reaffirmed those representations in regard to the condominium development. She alleged that condominium units and buildings were not completed as had been represented and that certain amenities that had been represented to be part of the condominium development were not provided.
Attached to Morris's complaint was a copy of a "Real Estate Purchase/Sales Contract" (hereinafter referred to as "the *Page 351 
agreement"). The agreement lists Morris as the "purchaser," Havenwood Village, Inc., as the "seller," and Aronov as the "listing" and "selling" company. The agreement provides that the condominium unit was located at 5914 Havenwood Drive in Montgomery, Alabama. It shows that Morris was to pay $1,000 as an earnest-money deposit to be followed at closing by a payment of $105,495. The agreement was signed by Morris, with Maxwell signing as a witness, on April 29, 1998. On May 8, 1998, Benjamin Vance signed the agreement on behalf of Havenwood Village, Inc., with Maxwell again signing as a witness. The agreement contained the following arbitration clause:
 "16.B. CONTROVERSIES, CLAIMS, COMPLAINTS, OR DISPUTES ARISING IF PROPERTY IS CLOSED, AND DEED HAS BEEN DELIVERED TO PURCHASER/S/BINDING ARBITRATION AGREEMENT:
 "The parties agree that the property sold has been involved in, and necessarily involves, interstate commerce, and that any controversy, claim, complaint, or dispute arising between the parties, or between either of the parties and any real estate licensees, if the property has been closed, and the deed has been delivered to the purchaser/s, is to be settled exclusively by binding arbitration. Purchaser/s and Seller/s specifically waive any rights they have to commence an action other than arbitration against each other or any real estate licensees. Any controversies, claims, complaints, or disputes arising if the property has been closed, and the deed has been delivered to purchaser/s, evolving out of or relating to this contract or breach thereof, shall be settled under the Commercial Arbitration Rules then in force of the American Arbitration Association, and all parties agree to be bound by the decision of this arbitration. The decision of the Arbitrator shall be a final and binding resolution, which may be entered as a judgement by a court of competent jurisdiction; and may then be enforced by use of legal remedies. Furthermore, in all events, no parties shall be liable for any indirect, special, consequential, or punitive damages or loss of anticipated profits."
The agreement also contained a section entitled "additional provisions" in which the following, in pertinent part, was handwritten:
 "1 — Seller to provide 4 year home warranty to be written by selling agent[;] 2 — Seller to provide satisfactory termite inspection letter; 
Seller to provide copy of survey at close; Condo Association to provide for exterior of unit at close; Contract subject to verification of what monthly condo fee includes amount to be charged 
acceptance of same by Purchaser. Purchaser to provide proof of condo insurance at closing, with minimum building coverage of $15,000 minimum personal liability coverage of $100,000 provide proof of renewal annually to Havenwood Condo Assoc.; . . . . Subject to addendums attached:"
Morris also attached to her complaint an "Addendum To Purchase Agreement" (hereinafter referred to as "the addendum") signed by her and Benjamin Vance, on behalf of Havenwood Village, Inc., with Maxwell's signature appearing as a witness. The addendum was dated April 29, 1998, below Morris's signature, but no date appeared below Benjamin Vance's signature. The addendum contained the following handwritten agreements:
 "1) Seller to sod backyard[;] 2) Seller to install higher toilet in master bedroom bath Purchaser will pay difference in cost[;] 3) Seller to install window *Page 352 
 screens, mailbox at street, garbage can with handle that rolls[;] 4) Seller to repair broken brick on side of unit by A/C and all gaps in any other brick; Seller to putty, sand paint molding above kitchen stove (crack)[;] Seller to paint front door hunter green color same as 2 bedroom model[;] 6) Seller to install safety rails in bath showers. . . ."
Based upon the language of the addendum, we infer that Morris's condominium unit was substantially completed on April 29, 1998, when she signed the agreement and addendum, and that even more had been done by May 8, 1998, when Benjamin Vance signed the agreement. Morris's complaint stated that the closing occurred on June 3, 1998, in Montgomery, Alabama, and that date is confirmed by a "Settlement Statement" signed by Janice Vance on behalf of Havenwood Village, Inc., and Morris.
 A. Aronov's Motion
On September 21, 2000, Aronov filed a motion to dismiss Morris's complaint and to compel arbitration, arguing, among other things, that the arbitration clause in the agreement required that Morris's claims be submitted to arbitration, that the parties had agreed that the sale of the condominium involved interstate commerce, and that the agreement did, in fact, involve interstate commerce because the condominium had been built with materials that were transported in, and involved, interstate commerce and because out-of-state companies had provided Morris with an appraisal and the builder with liability insurance coverage. On February 16, 2001, Aronov filed its "Notice of Filing Supporting Materials" (hereinafter referred to as the "notice of filing"), referencing and attaching a number of exhibits in support of its motion to compel arbitration.
On February 26, 2001, Morris filed what she termed a "supplement" to her objection to Aronov's motion to dismiss and to compel arbitration, referencing a December 11, 2000, objection filed by her.[3] Morris attached no documentary evidence as an exhibit to her supplement. The supplement consisted only of argument and attached copies of supporting caselaw. On March 5, 2001, the trial court entered an order denying Aronov's motion.[4]
 B. Benjamin Vance's Motion
On April 26, 2001, Benjamin Vance filed a motion to dismiss and to compel arbitration, arguing that the arbitration clause in the agreement required that Morris's claims be arbitrated and adopting and incorporating by reference Aronov's previously filed motion to compel arbitration and the supporting materials filed with that motion. Morris filed no response to Vance's filing. The trial court denied Benjamin Vance's motion on May 8, 2001. *Page 353 
 C. Havenwood's Motion
On May 21, 2001, Havenwood filed a motion to dismiss and to compel arbitration with a supporting brief and attached exhibits. That motion also incorporated by reference the materials that had been submitted in support of Aronov's motion to compel arbitration. Morris filed no response to Havenwood's filing. The trial court denied Havenwood's motion on June 1, 2001.
 D. Maxwell's Motion
On October 12, 2001, Maxwell filed a motion to dismiss and to compel arbitration; the motion had no exhibits attached, but it referenced the agreement that was attached to Morris's complaint. Maxwell failed to adopt, in support of her motion, any materials that had previously been submitted by any of the other defendants. Again, Morris made no response. The trial court denied the motion on October 18, 2001.[5]
On appeal, the defendants all argue that the trial court erred in denying their respective motions to compel arbitration.
 II. Analysis
Our review of the denial of a motion to compel arbitration is settled.
 "Our caselaw holds that an appeal is the appropriate method for challenging a trial court's denial of a motion to compel arbitration. See A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala. 1990). This Court's review of a trial court's refusal to compel arbitration is de novo. See Ex parte Warrior Basin Gas Co., 512 So.2d 1364, 1368 (Ala. 1987)."
Crimson Indus., Inc. v. Kirkland, 736 So.2d 597, 600 (Ala. 1999). Furthermore, this Court has stated:
 "A motion to compel arbitration is analogous to a motion for a summary judgment. The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce. Once such a prima facie showing has been made, the burden shifts to the party opposing arbitration to present some evidence indicating that there is no arbitration agreement subject to specific enforcement under the FAA. If the party opposing arbitration presents sufficient evidence to create a fact question as to the existence of a valid arbitration agreement, then the issue must be resolved by the trial court or by a jury, if one is requested."
Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala. 1999) (citation omitted) (emphasis added). See also Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277,280 (Ala. 2000). The effect of the transaction on interstate commerce must be substantial. See Sisters of the Visitation v. Cochran PlasteringCo., 775 So.2d 759, 761 (Ala. 2000) (citing United States v. Lopez,514 U.S. 549, 559 (1995)). "If the party seeking to enforce the arbitration agreement fails to make such a showing, then the opposing party has no burden of resisting arbitration and the motion should be denied." Brown v. Dewitt, Inc., 808 So.2d 11, 14 (Ala. 2001) (citing Exparte Greenstreet, Inc., 806 So.2d 1203 (Ala. 2001); Ex parte GeneralMotors Corp., 769 So.2d 903 (Ala. 1999)).
Turning first to Maxwell's motion to compel arbitration, we have noted that she failed to attach to her motion any supporting materials. Other than *Page 354 
incorporating by reference the agreement attached to Morris's complaint, Maxwell failed to submit any evidence showing that the agreement evidenced a transaction that affected, to any degree, interstate commerce. Maxwell failed to incorporate by reference the prior evidentiary submissions of Aronov, as the remaining defendants had done. Maxwell failed to meet her burden of proof as described in Ex parteCaver, supra, and the trial court's denial of her motion to compel arbitration is due to be affirmed. Aronov's motion to compel arbitration cited no decision of this Court subsequent to Hurst v. Tony MooreImports, Inc., 699 So.2d 1249 (Ala. 1997), and quoted from Hurst the statement that opinions of the United States Supreme Court "stand for the proposition that if any effect on interstate commerce can be found in a commercial transaction, then the transaction is considered to be one involving interstate commerce." 699 So.2d at 1257. The motion failed to acknowledge this Court's decision in Sisters of Visitation, supra, released six months before Aronov's motion was filed, establishing the rule that a transaction must "substantially" affect interstate commerce in order to render enforceable an associated arbitration provision. Aronov's motion argued:
 "5. The [Federal Arbitration Act] applies in this case and preempts State law because the contract between the Havenwood [Village, Inc.,] and the plaintiff involves the sale of a condominium which was built with materials that were transferred in interstate commerce. Furthermore, the plaintiffs [sic] had the house inspected and appraised by an FHA-qualified appraiser, obtained a home warranty from an out of state warranty company, (American Home Shield, AHS). The builder of the condominium project obtained products completed operation coverage' and liability coverage from an out of state insurance company. On information and belief, tools and materials, specifications, appliances, and other aspects of the project to build the condominium surely moved in and/or involved interstate commerce. Plaintiff in the contract acknowledged as much. See Contract § 16.B[,] supra. The sale of the condominium was governed by various Federal regulations, including, the Lead Based Paint disclosure requirements."
Although Aronov's motion was not supported by any evidentiary showings, Aronov did attempt in its notice of filing on February 16, 2001, to submit supporting evidence. It tendered various attached materials "in support of" the motion to compel, listing them, in pertinent part, as follows:
 "1. The Real Estate Purchase/Sales Contract dated April 29, 1998, that was signed by the Plaintiff and that contains an arbitration clause. (Attached as Exhibit 1);
 "2. Addendum to the Purchase Agreement that was signed by the Plaintiff and that provides `Intended and operated for occupancy by persons 55 years-or-Older, pursuant to `Housing for Older Persons (HOPA) exemption — Section 100.305 of the Fair Housing Act. (Attached as Exhibit 2);
 "3. Section 100.305 of the Fair Housing Act (codified in part as 42 U.S.C. § 3607 (2000)). (Attached as Exhibit 3);
". . . .
 "5. Certificate of Liability Insurance for Havenwood Village Condominium Association, Inc., that states Cincinnati Insurance Company afforded general liability coverage to Havenwood Village Condominium *Page 355 
 Association. (Attached as Exhibit 5)[reflecting a policy effective date of 10/28/97 and a policy expiration date of 10/28/00];
 "6. Documents from the Alabama Secretary of State's Office showing that Cincinnati Insurance Company is a foreign corporation. (Attached as Exhibit 6);
 "7. U.S. Department of Housing and Urban Development Settlement Statement (i.e. HUD-1 Settlement Statement) dated June 3, 1998, and signed by the Plaintiff that states: (1) State Farm shall provide `Contents Insurance (1 Yr.)' and `Flood Insurance (1 Yr.);' and (2) [American Home Shield] shall provide `Home Warranty.' (Attached as Exhibit 7);
 "8. 12 U.S.C. § 2603 (2000) which requires a purchaser and seller to complete [a] U.S. Department of Housing and Urban Development Settlement Statement. (Attached as Exhibit 8);
 "9. Documents from the Alabama Secretary of State's Office showing that State Farm is a foreign corporation. (Attached as Exhibit 9);
 "10. The Plaintiff's earnest money check from Regions Bank [Alabama]. The check is dated April 29, 1998, [and] is in the amount of $1000.00. (Attached as Exhibit 10);
 "11. Documents from the Alabama Secretary of State's Office showing that Regions Bank is a foreign corporation. (Attached as Exhibit 11);
 "12. The Plaintiff's `Premiere 4 Application' for a home warranty from American Home Shield Group of Companies. . . . (Attached as Exhibit 12);
 "13. Documents from the Alabama Secretary of State's Office showing that American Home Shield Group is a foreign corporation. (Attached as Exhibit 13);
"14. Affidavit of Barry Ross. (Attached as Exhibit 14)."
Although the affidavit of Barry Ross is listed as Exhibit 14 to Aronov's notice of filing, only Exhibits 1-13 appear in the record. An affidavit of Barry Ross does appear in the record as an attachment to the motion to compel arbitration filed by Havenwood, but that motion was filed on June 1, 2001, three months after Aronov's motion to compel had been denied on March 5, 2001, and, more importantly, the affidavit was notarized on May 21, 2001, two and one-half months after Aronov's motion had been denied and three months after the notice of filing had been filed. Accordingly, we do not have in the records before us a copy of the Ross affidavit Aronov made reference to, but, from all that appears, failed to attach as an exhibit to its February 16, 2001, notice of filing.
Thus, as to Aronov's motion to compel arbitration, we are left with: (1) the assertions of interstate impact contained within it, but which have no evidentiary significance and which cannot by themselves satisfy Aronov's burden to show a substantial effect on interstate commerce; and (2) the materials referenced in, and attached to, the notice of filing, excluding the apparently omitted Ross affidavit.
As previously mentioned, Benjamin Vance and Havenwood both incorporated Aronov's submissions by reference in their motions to compel arbitration. An affidavit of Barry Ross, appearing as an additional attachment to Havenwood's motion, and accompanied by its own exhibits, states, in pertinent part: *Page 356 
 "My name is Barry Ross. Attached hereto as Exhibit `A' are the Articles of Incorporation of Havenwood Village, Inc. Also attached hereto as Exhibit `B' are the Articles of Incorporation of Havenwood Village Condominium Association, Inc. Benjamin Vance, Janice Vance and Arthur Baylor were the directors of Havenwood Village Condominium Association, Inc., at the time it was incorporated and at the time Dorothy Morris purchased the home made the subject of this suit. Havenwood Village, Inc., was the declarant which created the Havenwood Village Condominium (Exhibit `C' attached).
 "Attached as Exhibit `D' is a certificate of insurance issued reflecting that the Cincinnati Insurance Company, headquartered in Cincinnati, Ohio, insured Havenwood Village Condominium Association, Inc.[,] regarding the property made the subject of this suit. The insurance was referred to in paragraph (24) of the sales agreement and made an exhibit to it.
 "Marty Carter was, at the time Havenwood Village, Inc., was incorporated, a resident of Florida; John V. Johnson was a resident of Georgia. These gentlemen were two of the six directors of Havenwood Village, Inc., and two of the four incorporators of said corporation. Marty Carter and John Johnson represented, at the time of the transaction made the basis of this suit, 70% of the ownership interest at Havenwood Village, Inc. Non-Alabama resident Marty Carter provided 99.8% of the capital associated with the initial stock subscription of Havenwood Village, Inc., which capital was utilized in the construction project made the subject of this suit.
 "In 1997, Havenwood Village, Inc., entered into an agreement whereby Merrill Lynch Business Financial Services, a Delaware corporation whose principal office is in Chicago, Illinois, issued a line of credit, which funds were utilized in the construction of the project made the subject of this suit.
 "It is my understanding that a substantial amount of the building materials used in the construction of the project made the subject of this suit were transported from locations outside the state of Alabama.
 "The transaction made the subject of this suit, as reflected by the addendum to the purchase agreement (Exhibit `E') reflects that this undertaking was regulated by the Federal Fair Housing Act."
Based upon the respective submissions of Aronov, Havenwood, and Benjamin Vance, we will now consider those submissions as they relate to the issue whether the agreement evidenced a transaction that substantially affected interstate commerce.
In Sisters of the Visitation, supra, this Court set out five factors to assist in analyzing whether a transaction substantially affects interstate commerce: (1) citizenship of the parties; (2) where the tools and equipment originated; (3) allocation of costs of services and materials; (4) subsequent movement across state lines; and (5) degree of separability from other contracts. Furthermore, "[t]his analysis is necessarily fact-intensive." 775 So.2d at 765 n. 5. This Court also similarly employed these factors in a transaction involving the sale of a condominium in Brown v. Dewitt, Inc., supra. Accordingly, we consider the factors in Sisters of the Visitation in light of the facts in this case.
 1. Citizenship of the Parties
Morris and Havenwood Village, Inc., were the only signatories to the agreement. It is undisputed that Morris is an Alabama resident. Havenwood's record on appeal includes the articles of *Page 357 
incorporation for Havenwood Village, Inc., as an exhibit to Ross's affidavit. Those articles state, as does an attached certification from the secretary of state's office, that Havenwood Village, Inc., was incorporated in the office of the judge of probate of Montgomery County, Alabama. Nothing in the other records on appeal suggests that the remaining defendants, who are nonsignatories to the agreement, were not incorporated in Alabama (for the corporate defendants) or were not residents of Alabama (for the individual defendants). Therefore, the agreement "involves a contract solely between . . . local parties," 775 So.2d at 765, as does the transaction, and this factor lends no support to a finding that the agreement evidences a transaction that substantially affects interstate commerce.
 2. Tools and Equipment
The only assertion concerning tools and equipment used in the project underlying the transaction is contained in Aronov's motion to compel arbitration. There Aronov stated that "[o]n information and belief, tools and materials . . . surely moved in interstate commerce." However, this assertion was not supported by any evidentiary filing, and as was the case in Sisters of the Visitation, "the record is silent as to whether [tools and equipment] were leased or purchased specially for the project and, if so, whether they had moved in interstate commerce." 775 So.2d at 766. Therefore, "[n]o substantial effect on interstate commerce can be developed based on [the defendants'] acquiring in interstate commerce any tools or equipment to be used in the performance of this contract." Id.
 3. Allocation of Costs of Services and Materials
The defendants produced no evidence tending to show that any out-of-state contractors were used to assist in the construction of Morris's condominium unit. While Barry Ross's affidavit stated that it was his "understanding that a substantial amount of the building materials used in the construction of the project made the subject of this suit were transported from locations outside the state of Alabama," as was the case in Sisters of the Visitation, "the record provides no information from which we can determine what portion of the amount the [defendants may have] paid [to any out-of-state contractors] is allocable to the cost of local labor and overhead." 775 So.2d at 766. Likewise, the defendants have presented no evidence of the allocation of out-of-state materials as compared to in-state materials used in the construction of Morris's condominium unit. Thus, "[the defendants] have not presented sufficient evidence to justify the conclusion that [the agreement evidences a transaction that] substantially affects interstate commerce by reason of a dependence upon materials and services moving in interstate commerce." 775 So.2d at 766.
 4. Subsequent Movement Across State Lines
The defendants cannot escape the fact that Morris's condominium unit is incapable of moving across state lines. While in their briefs the defendants attempt to rely on this Court's opinion in Ex parte Stewart,786 So.2d 464 (Ala. 2000), for the proposition that an intrastate activity can have an effect on interstate commerce, that reliance is misplaced. In Stewart, this Court affirmed a trial court's order grantingThe Birmingham News's motion to compel arbitration because it determined that the plaintiffs, newspaper deliverers, were an integral part of a flow of interstate commerce, i.e., "`the distribution of [The BirminghamNews], as a complete newspaper containing [national and *Page 358 
world-wide news items and interstate advertising], to its reading public.'" 786 So.2d at 469 (quoting Evening News Publ'g Co. v. AlliedNewspaper Carriers of New Jersey, 263 F.2d 715, 717 (3d Cir. 1959).
In this case, Morris is not a part of any such flow of interstate commerce. The interstate flow of services and materials used to construct Morris's condominium unit ended with the completion of the construction of the unit and its placement on the retail market as a finished, or a substantially finished, project. The agreement in this case evidences a transaction in which Havenwood Village, Inc., sold a substantially completed condominium unit to Morris. Therefore, the evidentiary submissions of the defendants that relate to the financing of the building project, i.e., the references in Ross's affidavit to the financiers for the project, the collection of capital, and the line of credit established for the construction, are not relevant to our consideration whether this transaction — the sale of a particular condominium unit to Morris — had a substantial effect on interstate commerce. See Brown v. Dewitt, Inc., 808 So.2d at 14 ("As noted by this Court in Sisters of the Visitation, the degree of interstate commerce involved in contracts related to the transaction at issue does not determine whether the transaction at issue substantially affects interstate commerce."). The transaction at issue was a sale of real estate located in this state where the seller was an Alabama corporation and the buyer was an Alabama resident. See also Ex parte Kampis,826 So.2d 819 (Ala. 2002) (discussion by plurality of the "come-to-rest" doctrine as it applies to interstate-commerce analysis); American GeneralFin. Co. v. Morton, 812 So.2d 282 (Ala. 2001) ("[W]e conclude that the sale of real property in Alabama to an Alabama resident by an Alabama company, where `all the obligations arising out of the sales contract are to be performed in Alabama,' is not a transaction within the flow of interstate commerce.").
 5. Degree of Separability from Other Contracts
The agreement stated that Havenwood Village, Inc., would provide a four-year home warranty to be written by the selling agent, identified in the agreement as Aronov. It further stated that Morris was required to show proof of condominium insurance providing building and personal-liability coverage at the closing on the property.
Aronov's submissions included the settlement statement of Morris and Havenwood Village, Inc., showing that Morris's insurance was being provided by State Farm, and a certification from the secretary of state's office indicating that State Farm is a foreign corporation. They also included Morris's application for a home warranty with American Home Shield and a similar certification from the secretary of state's office indicating that American Home Shield is a foreign corporation. The settlement statement further showed that the contract sales price of the condominium unit was $106,000. Morris's purchase price was increased by $217 for settlement charges relating to her purchase of contents insurance through State Farm. Morris's payment of $492.67 for county taxes for the period October 2001 through June 2003 and her $1,000 earnest-money deposit were then credited to that amount for a total of $104,724.33 due from Morris at closing. It further shows that Havenwood Village, Inc., paid the following amounts as settlement charges: (1) $3,180 in commission to Aronov; (2) $350 in attorney fees; (3) $181 for an attorney to record condominium documents; (4) $25.50 in recording fees; (5) $106 in state taxes; (6) $214 for flood insurance for one year to State *Page 359 
Farm; and (7) $495 for the home warranty through American Home Shield for which Morris had filed an application.
The records contain no evidence that Morris received any out-of-state financing for her purchase of the condominium unit. Her complaint stated that she paid the purchase price of the condominium unit from her savings. Nowhere in the records is this controverted by the defendants. Thus, because she is an Alabama resident, we conclude that Morris's savings were located in Alabama. The only evidence presented by the defendants in regard to any moneys paid by Morris is in regard to the $1,000 earnest-money deposit. Even assuming that Regions Bank is a foreign corporation,[6] we conclude that the $1,000 earnest-money payment was de minimis as compared to the entire purchase price and did not have a substantial effect on interstate commerce. See Ex parteLearakos, 826 So.2d 782, 785 (Ala. 2001) ("Likewise, the ostensible transfer of the funds for the plaintiff's $1,000 earnest money payment from the drawee bank in Illinois to the Alabama payee of the check drawn in Alabama does not establish a substantial effect of this real estate sale and purchase on interstate commerce.").
Similarly, we do not find that the combined payments to State Farm, also a foreign corporation as asserted by Aronov, of $217 and $214 for contents insurance and flood insurance, respectively, by Morris and Havenwood Village, Inc., had a substantial effect on interstate commerce. The same holds true for the $495 paid by Havenwood Village, Inc., for the home warranty through American Home Shield. Even considering these payments in the aggregate, see, e.g., Tefco FinanceCo. v. Green, 793 So.2d 755, 759 (Ala. 2001), the total represents less than one percent of the purchase price of the condominium, and we conclude that the combined effect on interstate commerce of those payments was not substantial. Nor does the fact that the agreement stated that "the property sold has been involved in, and necessarily involves, interstate commerce" determine whether the transaction in fact did substantially affect interstate commerce. See Rogers Foundation Repair,Inc. v. Powell, 748 So.2d 869, 872 (Ala. 1999) (stating that a similar recitation "[did] not prove that the acknowledged involvement of or effect on interstate commerce [was] substantial").
Further, we note that the signatories to the agreement were Morris and Havenwood Village, Inc., as the purchaser and seller, respectively. The arbitration clause at issue governed claims asserted by either the purchaser or seller against each other or by either against any "real estate licensee." While Aronov and Maxwell may arguably be "real estate licensees" (the record provides no definitive information in that regard), the other defendants are not. Thus, while the arbitration agreement, on its face, would not apply to any claims Morris asserted against the nonsignatory defendants, our conclusion that none of the defendants have met their burden of showing a substantial effect on interstate commerce obviates the need for us to analyze the standing of any of the nonsignatory defendants to enforce the arbitration provision.
 III. Conclusion
This Court's observation in Ex parte Learakos, supra, is applicable to this case, because in that case, as is presented here: *Page 360 
 "`[T]he record contains no proof that the contract or transaction in this case involved or affected interstate commerce substantially so as to satisfy the interstate-commerce criterion for the applicability of the Federal Arbitration Act[; therefore,] that Act does not apply to this contract or transaction. Rather, Alabama law, and specifically § 8-1-41(3), Ala. Code 1975, applies to prohibit specific enforcement of "[a]n agreement to submit a controversy to arbitration."'"
826 So.2d at 785-86 (quoting Rogers Foundation Repair, Inc. v. Powell, 748 So.2d at 872 (emphasis on "substantially" in Rogers; remaining emphasis added in Learakos)).
We conclude that the defendants failed to make a prima facie showing that the agreement involves a transaction substantially affecting interstate commerce pursuant to Ex parte Caver, supra, and Sisters of theVisitation, supra. Therefore, the trial court's denials of the defendants' respective motions to compel arbitration are due to be affirmed.
1001292 — AFFIRMED.
1001650 — AFFIRMED.
1001733 — AFFIRMED.
1010456 — AFFIRMED.
Brown, Woodall, and Stuart, JJ., concur.
Moore, C.J., concurs in the result.
[1] Bruce Griffith, d/b/a Griffith Appraisal Services, was also a defendant; he filed an appeal with this Court after the trial court denied his motion to compel arbitration, but that appeal (case no. 1001307) was dismissed on Griffith's motion on September 4, 2001.
[2] Maxwell filed with this Court a petition for a writ of mandamus challenging the trial court's order adding her as a defendant in this case; her petition was denied. Ex parte Maxwell, 812 So.2d 333 (Ala. 2001).
[3] Morris's brief states that on December 11, 2000, she "advanced" an objection to Aronov's motion to dismiss, and the case action summary similarly lists "Pltf. Dorothy Morris' Objection to Motion to Dismiss of Aronov Realty Brokerage Inc." on December 11, 2000. However, the record contains no such objection in written form. We further note that while three records have been submitted for our review (Benjamin Vance and Havenwood filed the same record on appeal), the notice of each appeal designated the entire record for compilation and submission on appeal, and none of the records contain a document corresponding to the referenced objection. It is possible that Morris made an oral objection.
[4] The trial court, on December 1, 2000, had entered an order originally setting a hearing on Aronov's motion for December 18, 2000, but nothing in the record indicates that that hearing took place. After Morris made her December 11, 2000, objection, the trial court set a hearing for March 5, 2001.
[5] The trial court never stated a rationale for its denials of any of the defendants' motions to compel arbitration.
[6] Although Aronov asserts that Regions Bank is a foreign corporation, we note that the earnest-money check it submitted shows that it was written on an account located in Alabama. Printed on the face of the check is "Regions Bank" with "Alabama" appearing below.