I believe that the majority erroneously reverses the trial court's order compelling arbitration; therefore, I respectfully dissent.
 I.
First, the arbitration agreement is not made invalid under Alabama law simply because it provides that "[t]he Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration agreement." In 1986, Alafabco, Inc., and The Citizens Bank entered into a quasi-contractual relationship in which the Bank agreed to loan Alafabco funds to complete certain construction projects. In 1998, Alafabco defaulted on its obligations to the Bank. Thereafter, the parties negotiated an agreement that provided for the restructuring and redocumenting of Alafabco's existing debt to the Bank. As part of the debt-restructuring negotiations, Alafabco and the Bank executed "renewal notes" dated May 3, 1999, and signed an "Agreement to Arbitrate." The arbitration agreement included the following provision:
 "GOVERNING LAW. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration agreement. The arbitration of any dispute shall be governed by the Rules of the American Arbitration Association. If there is an inconsistency between these rules and this Agreement, this Agreement shall govern."
After the restructuring, Alafabco again defaulted on its loan, and the Bank began *Page 806 
collection efforts. In September 1999, Alafabco filed a petition in bankruptcy pursuant to Chapter 11. The Bank moved for adequate protection of the property Alafabco had pledged to secure its obligations to the Bank. Alafabco and the Bank, both represented by counsel, negotiated a second debt-restructuring agreement, a second set of renewal notes dated December 10, 1999, and another arbitration agreement containing the same provisions as the May 3, 1999, arbitration agreement.
Alafabco sued the Bank on November 15, 2000, and the Bank moved to compel arbitration. Roger Campbell, president and chief executive officer of the Bank, and Doug Alexander, a vice president, submitted affidavits in support of the motion to compel arbitration. Campbell and Alexander both state in their affidavits that Alafabco was "provided with a completely free choice with regard to whether to simply allow The Bank to move forward with the legal rights it already possessed, or instead, to enter into the debt restructuring agreement at issue." They further state that, "[a]s a part of the debt restructuring agreement, alternative dispute resolution agreements were executed."
Alabama cases and statutes distinguish between predispute arbitration agreements, i.e., agreements executed before a dispute between the parties has arisen, and postdispute arbitration agreements, i.e., agreements to arbitrate executed after a dispute has arisen. While, under Alabama law, predispute arbitration agreements are unenforceable, agreements to arbitrate disputes that have already arisen are enforceable under the Alabama Arbitration Act (the "AAA") and at common law. Ala. Code 1975, § 6-6-1 and § 6-6-16; Fuerst v. Eichberger, 224 Ala. 31,33, 138 So.2d 409, 410 (1931). Parties that enter into such postdispute arbitration agreements are aware of the nature of the complaint they are allowing to proceed to arbitration. Ex parte Allen, 798 So.2d 668, 676
(Ala. 2001) (Moore, C.J., concurring in the result).
Alafabco and the Bank entered into their arbitration agreement after their dispute had arisen. Alafabco alleges in its complaint that the Bank breached its contract with Alafabco in 1998, thus causing Alafabco to "incur massive debt." Thereafter, because Alafabco's loans were delinquent, the parties negotiated the debt-reconstruction agreement that provided for the execution of the renewal notes and the arbitration agreement. The arbitration agreement provides: "The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration agreement."
The main opinion concludes that "there is no evidence in this case of an agreement to proceed under the AAA or the common law." I am unaware of any authority, and the majority cites none, that requires that for a contract to be enforceable under Alabama law, the parties must affirmatively assert that they choose to proceed under Alabama law. In fact, if this Court concludes that federal law does not apply in this case, then, unless the law of some other jurisdiction is implicated, the agreement is not lawless, but, instead, it is subject to the application of Alabama law. See Cherry, Bekaert, Holland v. Brown, 582 So.2d 502
(Ala. 1991) (stating that, while the parties normally are allowed to choose what law they wish to apply to their agreement, Alabama law will govern the agreement if the parties' choice would run contrary to the public policy of Alabama), see also Restatement (Second) of Conflict ofLaws § 187 (1977); 8 Samuel Williston, Williston On Contracts § 19:6 (Richard A. Lord, 4th ed. 1998).[3] *Page 807 
For the reasons I recite below, I believe that the Federal Arbitration Act governs this contract dispute, but, if, as the majority concludes, it does not, then, the agreement is governed by Alabama law. Under Ala. Code 1975, § 6-6-16, the parties entered a binding contract to arbitrate an existing dispute. They incorporated into their contract, by reference, the terms of the Federal Arbitration Act and the rules of the American Arbitration Association:
 "The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration agreement. The arbitration of any dispute shall be governed by the Rules of the American Arbitration Association."
This Court should construe those terms to give effect to the intent of the parties to enter a binding agreement;[4] thus, I believe the contract incorporates by reference the rules under which the parties intended the arbitration agreement to be interpreted. I am unaware of any authority, and the majority cites no authority, that stands for the proposition that these rules of construction, interpretation, and enforcement run contrary to the public policy of Alabama.
 II.
Second, the dispute the parties agreed to arbitrate "involves commerce" and is, therefore, subject to the Federal Arbitration Act.
This Court reviews de novo a trial court's denial of a motion to stay its proceedings pending arbitration. Tefco Fin. Co. v. Green, 793 So.2d 755
(Ala. 2001); Green Tree Fin. Corp. v. Vintson, 753 So.2d 497, 502 (Ala. 1999). This Court has held that "`to prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim,'" Jim Burke Auto., Inc. v. Beavers,674 So.2d 1260, 1265 (Ala. 1995) (opinion on application for rehearing) (quoting In re American Freight Sys., Inc., 164 B.R. 341, 345 (D.Kan. 1994)), and "`has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce,'" Tefco Fin. Co. v. Green, 793 So.2d at 758 (quoting Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala. 1999) (emphasis added)).
In Sisters of the Visitation v. Cochran, 775 So.2d 759, 763 (2000), the Sisters of the Visitation had contracted with an in-state contractor to renovate a chapel located in Alabama and owned by the Sisters. Pursuant to an arbitration provision in the contract, the Sisters sought arbitration of their dispute with the contractor. In my dissent in that case, I noted that the majority held that the Federal Arbitration Act can apply to a contract only if that "individual transaction `substantially affect[s]' interstate commerce." 775 So.2d at 782. Since our decision inSisters of the Visitation in March 2000, this Court has routinely denied a party the right to arbitration where that party has failed to prove that the individual transaction substantially affected interstate commerce. *Page 808 See Aronov Realty Brokerage, Inc. v. Morris, [Ms. 1001292, April 26, 2002] 838 So.2d 348 (Ala. 2002) (denying arbitration in an action brought by the purchaser of a condominium unit against a real estate brokerage, a real estate agent, and the condominium association);Liberty Nat'l Life Ins. Co. v. Douglas, [Ms. 1000683, Feb. 8, 2002]826 So.2d 806 (Ala. 2002) (refusing to compel arbitration where an employee of an insurance company sued her employer); Ex parte Kampis, [Ms. 1000099, Feb. 8, 2002] 826 So.2d 819 (Ala. 2002) (denying arbitration in an action brought by the purchaser of a house against a contractor);Alternative Fin. Solutions, LLC v. Colburn, [Ms. 1001285, Nov. 16, 2001]821 So.2d 981 (Ala. 2001) (denying arbitration where borrowers brought an action against lenders challenging the legality of certain loans); and Exparte Learakos, [Ms. 1000244, July 13, 2001] 826 So.2d 782 (Ala. 2001) (denying arbitration in an action brought by the purchaser of a house against a real estate company and its agents).
The Supreme Court of the United States stated in United States v.Lopez, 514 U.S. 549 (1995), that in order for a federal statute that regulates commercial transactions to be a valid exercise of Congress's Commerce Clause power, the aggregate nationwide participation in that activity — not the individual transaction in isolation — must "substantially affect" interstate commerce. Lopez, 514 U.S. 556-57. This "substantial-effect" test — used to determine the constitutionality of a statute under the Commerce Clause — was not a new standard created in Lopez, but has been the test of a statute's constitutionality since the early twentieth century. Id. at 555-57.
Once it has been determined that Congress acted within its Commerce Clause power in enacting a statute, whether that statute reaches certain activities does not depend on whether that individual act, when considered separately from all similar acts, has a substantial effect on commerce. As Wickard v. Filburn, 317 U.S. 111 (1942), made clear, Filburn's "trivial" wheat production could be reached by the Agricultural Adjustment Act. The standard established by the Supreme Court of the United States is that "`where a general regulatory statute bears asubstantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.'" Lopez,514 U.S. at 558 (quoting Maryland v. Wirtz, 392 U.S. 183, 197 n. 27 (1968)).
The standard for the application of the Federal Arbitration Act to an individual contract was made clear to us in Allied-Bruce Terminix Cos.v. Dobson, 513 U.S. 265, 267 (1995). The Federal Arbitration Act provides in pertinent part that "a contract evidencing a transaction involvingcommerce . . . shall be valid . . . ." 9 U.S.C. § 2 (emphasis added). The Supreme Court of the United States held in Allied-BruceTerminix that the requirement of the Federal Arbitration Act that an individual contract involve interstate commerce should be read in the broadest possible terms because the word "involving" signals an intent to "exercise Congress' commerce power to the full." 513 U.S. at 277. The Court also stated that a contract, to be subject to the Federal Arbitration Act, did not have to evidence a transaction that was "substantially interstate." 513 U.S. at 269.
Thus, I believe this Court erred when it held in Sisters of theVisitation that a particular contract, in order to be enforceable under the Federal Arbitration Act must, by itself, have a substantial effect on interstate commerce, and this Court errs again today by applying theSisters of the Visitation standard to this case. *Page 809 
Campbell states in his affidavit that "prior to May 3, 1999, [Alafabco] borrowed substantial funds from The Bank, on multiple occasions, for the purposes of covering business operation expenses, including labor and material expense for performing jobs for Champion International at that entities [sic] Kenton, North Carolina facility, as well as the Courtland, Alabama facility. These loans were not repaid at the time Alafabco began Chapter 11 bankruptcy proceedings." Campbell and Alexander both state in their affidavits that, "the loans issued by The Citizens Bank and the debt restructuring at issue facilitated the operation of Alafabco, Inc., which did business affecting interstate commerce, and directly engaged in interstate commerce, including contract work in North Carolina and the state of Tennessee, as demonstrated by the attached records."
Attached to Campbell's affidavit are invoices of interstate transactions. The invoices indicate that Alafabco sold equipment and materials and provided services to Champion International in Canton, North Carolina, and Ooltewah, Tennessee.
Based on the foregoing evidence presented by the Bank in support of its motion to compel arbitration, I conclude that the Bank presented the requisite "`some evidence which tends to establish [its] claim,'" JimBurke Auto., 674 So.2d at 1265 (quoting In re American Freight Sys.,Inc., 164 B.R. 341, 345 (D.Kan. 1994)), indicating that the Bank's loans to Alafabco "involve commerce." Therefore, I would affirm the trial court's decision to compel arbitration.
[3] Williston writes:
 "The reasoning behind the Restatement rule that where the parties have chosen a law that would render the contract invalid, their choice will not be applied unless it would have applied absent their agreement is that the parties would not purposely have chosen a law that would invalidate a bargain, and that their (apparently) mistaken choice should be ignored in favor of protecting their expectation that they entered an enforceable bargain."
8 Williston, § 19:6, at 161-63 (footnote omitted).
[4] See Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala. 2000) (stating that where there is a choice between a valid construction and an invalid construction, the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms).